IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

RAYMOND C. LITTRELL,                    )
                                        )
                Plaintiff,              )
                                        )
vs.                                     )        Case No. 04-0124-CV-W-ODS
                                        )
CITY OF KANSAS CITY,                    )
MISSOURI, et al.,                       )
                                        )
                Defendants.             )

ORDER AND OPINION GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

Pending is Defendants' Motion for Summary Judgment (Doc. #52). For the following reasons, the Motion is granted.

I. BACKGROUND

Plaintiff Raymond C. Littrell was hired by Defendant City of Kansas City, Missouri ("the City") on March 21, 1994 as a firefighter. He was promoted to the position of fire apparatus operator on May 25, 1997. Plaintiff was stationed primarily at Station 19, located at Westport and Broadway in Kansas City, Missouri. Defendant Richard Dyer (Chief Dyer) was employed by the City on October 9, 2000 as Director of the Fire Department and Fire Chief. The City has a sexual harassment/misconduct policy, which includes a reporting procedure. The Policy states that "inappropriate sexual conduct is prohibited and will not be tolerated in the City workplace." Def. Exhibit A.

During the summer of 2002, Plaintiff met Jessica Niemeyer, not an employee of the City, while on duty at Station 19. On more than one occasion, Plaintiff, who is married with two children, engaged in sexual relations, including sexual intercourse, with Ms. Niemeyer at Station 19. After several months, Ms. Niemeyer threatened to tell Plaintiff's wife and Chief Dyer about their affair. On November 2, 2002, Plaintiff informed his wife of the affair. The following day, Ms. Niemeyer telephoned Plaintiff's wife to tell her about the affair. While the actual day is disputed, and irrelevant, Plaintiff went to

Battalion Chief Pat Dujakovich at Station 32 and informed him that he and Ms. Niemeyer had engaged in sexual relations at Station 19.  Plaintiff also alleged that others were having sex at the station as well, but did not identify any firefighters by name.  Plaintiff also informed Captain Greg Ono that fire personnel were having sex at Station 19.  On November 3, 2002, Chief Dujakovich took Plaintiff to meet with Ken McFarland, Treasurer of Local 42  of the International Fire Fighters Union (Union).

On November 13, 2002, Chief Dyer received a complaint from Ms. Niemeyer that she and Plaintiff had been having sex at Station 19.  Her complaint did not allege any sexual relations with other firefighters and she denied any other sexual relationships. She did state that the other firefighters knew of the sexual relationship between Ms. Niemeyer and Plaintiff. Between November 24 and November 26, 2002,  Plaintiff again spoke to Union President Louie Wright, McFarland and Dujakovich about sexual conduct at Station 19.

Chief Dyer told Wright that if Ms. Niemeyer's allegations were substantiated, Plaintiff would be terminated. At that point, Plaintiff informed Mcfarland that he wanted the Union to put together a deal that would allow him to keep his job. The Union, representing Plaintiff, negotiated an agreement with Chief Dyer that allowed Plaintiff to remain employed with the City. At that time, Plaintiff informed McFarland he had spoken with an attorney, but wanted the Union to keep representing him.

On November 29, 2002, Plaintiff signed an agreement admitting to misconduct and accepting a six-month suspension and demotion. The agreement also stated "that the Union has provided full and fair representation, and I hereby release and discharge the Union, the KCFD, and the City from any claims, actions, suits and/or demands by me arising out of or in any way related to this matter."  Def. Exhibit B. Dujakovich did not specifically tell Plaintiff anything would happen to him if he did not take the deal.  On December 8, 2002, Plaintiff was suspended for six months. He was demoted to a probationary firefighter on December 15, 2002.

On May 30, 2003, prior to Plaintiff's return from suspension, Plaintiff's attorney sent the City a letter seeking to renegotiate Plaintiff's settlement agreement. The Fire Department forwarded that letter to the Human Relations Department for an

2

investigation.  On June 3, 2003, Plaintiff returned from suspension and was assigned to the Fire Academy for a refresher course. This is a common practice for employees who have been off duty for an extended period of time. Following completion, Plaintiff was assigned to an open position at Station 5, located at the Kansas City International Airport. Since that time, Plaintiff has not requested reassignment to another fire station and continues to be stationed at Station 5.

On June 16, 2003, Plaintiff's attorney sent a letter to an assistant city attorney stating that there had been threats of bodily harm to his client. On June 19, 2003, the City requested specific facts regarding alleged threats of bodily harm. Again on June 24, the City requested specific facts regarding the threats. Also on June 24, 2003, Pat Reisenbichler, Assistant to the Fire Director, sent Plaintiff a letter requesting Plaintiff contact him to set up a meeting to discuss his allegations

On July 3, 2003, Chief Dyer sent Plaintiff a letter reminding him that he promised Reisenbichler he was preparing a written document regarding the threats which the City had not received.  The letter also notified Plaintiff that he was to provide specific information to Reisenbichler by July 15, 2003 or the City would determine he had no complaint. A meeting was held on July 31, 2003 where Plaintiff gave Reisenbichler a list of five threats occurring between June 3, 2003 and July 27, 2003. The list included three incidents that occurred at the Fire Academy two months before. One incident involved an individual not employed by the City who allegedly threatened Plaintiff's wife, stating that if Plaintiff didn't "back off," he would get hurt. Another incident involved  a Fire Department employee who told Plaintiff "there's guys out there that want to put a pick axe through your head."  Plaintiff did not inquire as to the identity of the employee. Plaintiff claims to have made a report to the Federal Bureau of Investigation, but did not make a complaint or report to the Kansas City Police Department about the statements.

The City's Violence in the Workplace Policy defines threat as "an expression to inflict injury, harm or menace, causing one to be placed in reasonable fear for his/her safety (e.g. I'm going to knock your block off" or "I'm going to kill myself.")." Def. Exhibit A. After reviewing the written document from Plaintiff, Chief Dyer determined that none of his complaints constituted a threat as defined in the policy, because neither alleged a

3

threat had been made to him. Def. Exhibit D. August 4, 2003, Chief Dyer sent a letter stating that further investigation of such threats were not warranted because the threats did not meet the definition of a threat under the City's Policy. Plaintiff never reported that he felt pressured to have sex at the fire stations. He never made reports to the labor's employee relations manager, nor did he make any report of pressure to have sex to any manager of the EEO Officer.

On February 2, 2004 Plaintiff sued the City claiming the discipline and transfer resulting from his agreement with the City violated his rights under the First and Fourteenth Amendments and Title VII of the Civil Rights Act. None of his claims arise directly from the threats he complained of beginning in June 2003.

## II Discussion

### A. Standard

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Release Signed by Plaintiff

4

On November 29, 2002, Plaintiff signed an agreement admitting to misconduct and accepting a six-month suspension and demotion. The agreement also stated "that the Union has provided full and fair representation, and I hereby release and discharge the Union, the KCFD, and the City from any claims, actions, suits and/or demands by me arising out of or in any way related to this matter." Def. Exhibit B. Each of Plaintiff's four claims arise from events occurring prior to his signing of the release. If the release is found to be valid, the Court need not reach the merits of Plaintiff's claims. Plaintiff argues the threats in June 2003 constituted duress that invalidated the November 2002 agreement.

A court action may be barred by a settlement agreement between the parties. See, Pilon v. University of Minnesota, 710 F. 2d 466 (8th Cir. 1983). However, a contract will not be enforced if it is signed under duress. See, Clark v. Riverview Fire Protection Dist., 354 F.3d 752 (8th Cir. 2004). Under Missouri law, the question regarding duress is whether, considering all surrounding circumstances, one party to the transaction was prevented from exercising free will by the threats or wrongful conduct of the other. Id at 755, quoting Andes v. Albano, 853 S.W.2d 936, 942 (Mo.1993) (en banc).

Plaintiff claims that he was under duress when he signed the release. In supporting this, Plaintiff states that on November 26, 2003, Chief Dujakovich suggested "you need to think about it. You better take the deal." Further, Plaintiff claims he was told to "keep quiet" by McFarland. However, Plaintiff admits that Dujakovich never told him something other than termination or other disciplinary action would occur if he did not take the deal that was being offered. Nor did he ever tell Plaintiff that he did not want the investigation to occur. Moreover, in the letters to the City, Plaintiff makes no mention of alleged duress or threats by Dujakovich.

The only people present when Plaintiff signed the release were Plaintiff's wife, the president of the Union and a representative from the Union. Neither McFarland nor Dujakovich was present. Not only was Plaintiff represented by the Union at the time, Plaintiff had consulted with an outside attorney regarding the agreement presented to him. Plaintiff even had a conversation with his Union representative where he requested McFarland "put together a deal" to save his job. This resulted in the agreement Plaintiff

5

signed on November 29.

The conversation between Plaintiff and Dujakovich occurred three days before Plaintiff signed the agreement. No members of the Fire Department staff or management were present during the meeting when Plaintiff signed the agreement. No actual threats were made relating to Plaintiff signing, or not signing, the release. Moreover, the threats Plaintiff alleges caused the duress occurred over six months after Plaintiff signed the agreement. Looking at all surrounding circumstances, the undisputed facts in the record establish that Plaintiff was not under duress when he signed the release which discharged any claims by the Plaintiff related to this matter.[1]

### III. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

IT IS SO ORDERED.

Date: December 15, 2005

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

---

[1]While the Court has reservations about the merits of Plaintiff's claims, the Court does not address the remaining arguments. Nothing contained herein should be construed as any indication of how the Court would rule.

Case 4:04-cv-00124-ODS   Document 63   Filed 12/15/05   Page 6 of 6